The next case is NBIS Construction & Transport Insurance Services, Inc. v. Liebherr-America. Matthew Conigliaro is here for the appellants. Joshua Goodman is here for the appellee, NBIS. And, Mr. Conigliaro, you may begin when you're ready. Good morning, may it please the court. My name is Matt Conigliaro. I am with Carleton Fields, and I'm here today on behalf of the appellant in this case, LUS. The magistrate judge found LUS liable for negligence under two theories. The first concerning a training session or set of sessions that were done with SIMS, and second with regard to the delivery of a product safety bulletin. We presented multiple arguments why, as a matter of law, the judgment in this case should be reversed and the case remanded back for entry of judgment in LUS's favor. And I'll begin with the economic loss rule. Florida's economic loss rule prohibits tort claims if the only damages that are at issue are economic. And in this case, that's exactly what we have. NBIS sued to recover for damage to the crane. This was not about personal injuries. This was not about damage to any other property. It was purely damage to the crane. Counsel, may I ask you a question? Do you believe that it would be appropriate to certify a question to the Florida Supreme Court? I'm not sure that there is a case on point in Florida with respect to similar facts at issue here. First, thank you to the court for the memorandum ahead of this argument raising that issue. It gave us a chance to prepare for that. And hopefully my answer will be informed in how I respond to that. And I want to tackle it in a few ways. The ultimate answer is no, we believe this court should just reverse. But of course, let me go a little deeper into that. The court's question referenced a stipulation, whether Florida law would allow for a party to stipulate its way around an economic loss rule. There was a stipulation in this case that was part of a set of stipulations that were entered prior to the trial. And one of them was that the crane was not defective. Now I think the parties have different perspectives over what that meant. The language certainly came from NBIS. They wanted that language to say that this was not a products liability case, or this is not a case involving the economic loss rule, or the economic loss rule has no application. That's not what the stipulation was. We, LUS, did not stipulate that the economic loss rule does not apply. We did not stipulate that this is not a products case. We did not waive the economic loss rule. What they did was use the term defect, which really is a strict liability concept more so than a negligence concept. And we don't disagree that we think the crane was not defective. Well, the defect, they're alleging, the way I understand it, is the defect is not in the crane. They're alleging the defect is in the warning, right? And then the defect in the warning caused the fatality. Well, a few things there. First, this is not the fatality case. There's no personal injuries at issue here. It's purely economic damages in this case. Well, I mean, they've pledged it as a negligence case. Yes, negligence involving these economic damages. The damages at issue here are only as to the crane itself. Yes. And that's exactly, the $1.7 million is how the damages were calculated. Basically, it's the insurance recovery. Isn't it basically the recovery of, they sold the crane and it's what the loss would have been because when they sold the crane, they couldn't sell it as undamaged? Yes, and so that's the economic difference in the value of the crane and that's what the insurance paid out. And now NBIS is functionally the insurer here. All right, so let's talk about the, I understand that no one is using the word defect in the traditional products liability sense, but in essence, it's a failure to warn case. Is it not? We agree with that and we believe that's why this is a products case and why the economic loss rule applies to both negligence theories that NBIS went forward with. Are there not cases that say that if you have a failure to warn case, you cannot recover for solely economic losses to that, to the property? Well, the economic loss rule case law, that's exactly what the principle is and indemnity insurance I think says it very clearly, a tort action is prohibited if the only damages are economic losses. The airport rent-a-car case that we rely on, it's very similar in the sense it involved buses that caught on fire, damaged themselves and the action was brought to recover. The economic losses from the diminution in value of the buses and the Supreme Court of Florida said that's not covered because of the economic loss rule and I suppose you can look at it as it's a lack of duty or you can look at it as maybe if there is a duty, it's still a prohibited claim, but either way, the result is the claim can't be brought and that's what we have here and I think that the case law in Florida is more than sufficiently clear for this court to rule that there is, the claims are prohibited under the economic loss rule. With respect to the stipulation, it would be a different case had we stipulated this is not a products liability case, but we didn't do that. We didn't waive the economic loss rule and I'll suggest that the only way that stipulation could be used against us to somehow take the economic loss rule out of this case would be if we made that kind of stipulation and we did not. The parties can stipulate that away. I'll just suggest that that would be a different case had we done that, but we did not do that. There's just a stipulation that the crane was not defective. The issue in negligence really isn't truly defect, it's was there an unreasonable danger here, was there an unreasonable risk and they framed it in terms of these particular events. So they framed the first... Is that a question of law or is it a question of fact whether a case is a products liability case? A question of law, Your Honor. Aren't failure to warn cases typically considered products liability cases or do you think that's different? In most instances, they would be, but there are lots of variations on where different warnings duties come from and obligations. Here we are in a classic product situation. The LUS is the American subsidiary of the German manufacturer and was a purchaser of the crane and was a seller of the crane, offered training services on the crane consistent with or based on, I guess I should get that language exactly right. The language is the content of the Liebert crane's operating instructions is the basis for the training. That was the language in the document that SIMS signed. So the training that was done by LUS as the American distributor was on the instructions, the manual that came with it. So all of this is exactly what products liability is about, what warnings were given with the products. Here we had an operating manual that I believe was about 2000 pages and we did about 40 hours of training on that for the benefit of SIMS. And the claim was that in that training, which was based on the manual, you didn't cover the T4 pin and that there needed to be warnings not to manipulate the T4 pin and what you should do if you did manipulate the T4 pin. But all of that is caught up in warnings, in a failure to warn concept. Doesn't this extend, and maybe this is a good reason to ask the floor to Supreme Court, but doesn't this argument extend past, I would say, the genesis of the economic loss argument? I don't know that I would imagine that contracts would provide for damages in case the warnings weren't good enough or in case the manual didn't cover the right thing or in case the training didn't cover the exact issue that emerged. It seems like the economic loss rule was more for cases where it really was just a straight economic loss. Like I had a case, Robin Hood last year, where the plaintiffs couldn't sue Robin Hood because they lost money in their investments, right? That seems more like a straight economic loss is where this started. Tell me why that's wrong. Respectfully, I do disagree, Your Honor. And thank you for the question. The way the Court has limited this is we've reduced the economic loss rule down to products cases. And in doing that, the courts have said that we expect you to deal with these problems. And this is an economic loss case, to deal with these problems either through your contract, through warranty, which is kind of contract-like, or through insurance. And here, Sims did exactly that. Sims bought a crane and got insurance on it, and when the crane had an accident that damaged itself, they made a claim on that insurance, and so Sims was made whole. This is the insurer who is now coming after the distributor and saying, I want you to cover this through negligence and trying to utilize tort law. So the way Florida has handled that, Your Honor's example really related to a different context, not a products context. Sure. And so Florida has said, in this context, which if tort law is this wide, products is about here, and within products, this is still a sliver of that, which is where the only damage at issue is economic damages, basically to the product itself. Had this been a claim for personal injuries, we wouldn't be making this argument. Had this been a claim for damage to other property, not the crane, we would not be making this argument. But whether you look at it under the training theory, or you look at it under the product safety bulletin theory, it's still damage to the crane, and it falls within that super narrow subset. So companies in Florida know that this is the rule, arguably, and are expected to handle it, as you say, through insurance or other contractual matters. That's the argument. I think that, as a practical matter, the commercial world works this way. The commercial world works with contracts that are very complex and developed. In fact, the training here actually was done through some contractual ways. If you really dig through the record, you kind of see how that unfolded. The warranties are very commonly negotiated. This, I think, the question or that concern would be a larger discussion if we were talking about maybe a consumer, more common, small situation. As opposed to a corporate entity. A large commercial transaction involving what I'll just say was a really big crane. So they did handle it that way, and I think that's the way the commercial industry works. There's a Middle District of Florida case interpreting Florida law. It's Belize versus Rent-a-Services Corporation, and the Middle District says in the Florida law, a products liability claim may arise from a defective condition like defective or inadequate warnings, which is what we have here, and then the court said in such a case, a plaintiff may proceed under a theory of negligence, strict liability for both, close quote. How does that case inform our analysis? All that is true, and what comes after it is the recognition that the economic loss rule then says what claim cannot proceed is a claim solely for economic damages. I've got one question that I should have asked earlier. It seems that this case is pretty similar to Airport Rent-a-Car, but then TIARA potentially recedes from some of those earlier cases. How do you read the TIARA decision with respect to its treatment of Airport Rent-a-Car? I think it just took the principles that were fairly broadly stated in many of those earlier cases and said we're reducing it down to products. Really, the question I think before this court is, is this a products case? When the court answers yes to that question on both of these theories, the answer should be the judgment is reversed and the case remained. Just to talk about that Middle District case, again, the economic loss doctrine applies in that case because it was solely economic losses to the product itself. Yes, Your Honor. Okay. If I can save the balance for rebuttal. Thank you, Mr. Conigliaro. Mr. Goodman. Good morning, Your Honor. May it please the court. My name is Josh Goodman, and I represent NBIS Construction and Transport Insurance Services, a subsidiary of Sims Train Equipment Company. We submit that the court does not need to certify this case to the Florida Supreme Court as there is ample case law on stipulations as well as it can affirm the trial court's findings of fact, conclusions of law, and judgment against Liebherr U.S. With regard to the issues on appeal 1 and 2, this case is not about products liability. This case is about, one, a failure to properly train a crane operator how to properly lock. Isn't this really a failure to warn claim? This is not, Your Honor, and let me give you an analogy. So if we talk about failure to warn, first of all, the stipulation, if I go to the stipulation question Your Honor had asked about, the stipulation here specifically states that the crane is not defective at any time prior to or at the time of the incident that occurred on February 19, 2018. That is consistent with the complaint. We did not allege any sort of failure in the product, in the design, or the warning. This is also consistent with the defendant's affirmative defenses that claim that they didn't have any failure of the design, the product, or the warning. And it's consistent with the evidence. The evidence put forward was not that this was a failure to warn. The court needs to look at, in product liability cases, to look at as it left the manufacturer and on the date of loss. And in this case, if you look at when it left the manufacturer, which is a separate entity to German entities, separate entity from Liebherr U.S. Liebherr GmbH, which I'll refer to as Liebherr Germany because I don't pronounce that very well. But Liebherr Germany is a separate company. They put out a warning. They identified that there was an issue with the warning. They put out a product safety bulletin and a modification all before the date of loss. So on the date of loss... But again, that suggests to me that what your claim really is, is a failure to warn. Because what you're complaining about is the fact that Liebherr America did not provide a warning regarding the T4 pin. And that the T4 pin did not need to be touched. And that there needed to be a cap on it so that it would not be manipulated. Another analogy, Your Honor. If they're in-product defect claims, when companies or manufacturers have large recalls, they generally hire companies to manage the paperwork. To distribute it and to get it to the owners. If they fail to manage the paperwork properly, it's not a failure to warn against them. It's a failure to do what they were hired to do, which was manage the paperwork. Here, in the record, Liebherr U.S. did not even know what was in the product safety bulletin. So how could they fail to warn of something that they don't even know is in the product safety bulletin? All they were hired to do was disseminate the information to all of the owners of LTM 1500 cranes in the United States. They failed to do that. They sent it out to 25 of 32 cranes. Six of those cranes they did not have addresses for. They had the address and information for SIN's crane. There were over 16 internal emails at SIN. But how is that a failure to train? Because what you're suggesting is that they had an obligation or they had a duty to provide the warning that the German company had now disseminated after the accident in Japan. So the law in Florida under PR says that the economic loss rule applies to product defects. Product defects, if one looks to Florida's jury instructions, is a defect in the design, a defect in the manufacturer, or a defect in the warning. We stipulated that there was no product defect here. Parties in Florida can stipulate away their constitutional rights, their statutory rights, their common law rights. That's what happened here. Isn't that a stipulation to one of those three rather than all of those three? If someone says that there is no product defect, a product defect in Florida is defined as a design, manufacturer, or warning that's defective. So when you globally, when somebody globally says that there was no defect here, and their affirmative defenses say there was no defect, and one of their big defenses was that they didn't fail to warn. So they can't now. There is a case that talks about that stipulations are a matter of integrity. And for someone not to stay with the stipulation that they put forward, and I think that case is Central Square Paragon versus Great Divide, it talks about it's a matter of integrity. And the courts have to enforce it. It is clear error for a trial court not to enforce a stipulation. So it would have been clear error for the trial court not to enforce the stipulation. And it comports with, again, all pleadings, and it comports with the evidence. One can't say at trial there's no design defect, there's no manufacturing defect, and then there's no warning defect. The plan is to prove that nobody puts in any evidence of a design, manufacture, or warning defect, because at the time of the loss, there was sufficient warnings that would have prevented this, and would have put the crane operator on knowledge of the risk associated. If the other side had agreed, though, to all three of those, then why would it bother going to trial? Why wouldn't it just try to have a settlement? I mean, far be it from me to engage in litigation strategy, but it seems like you'd be giving up the store if you agreed to all three of those. You're right. Unfortunately, in the past 28 years, I've litigated cases where things seem very, very clear to me, and it's not to the other side. And thankfully, that's the case, so if it was, I wouldn't have a job. So you'd have to ask them why they did that. Well, I mean, he said that they didn't stipulate to all three, that they stipulated to just the first bucket. How can they say that they did not stipulate to all three when they put in evidence that there was no defect to the design, to the manufacture, or the warning? And their affirmative defense says, as an officer of the court, they put forward in a pleading that there was no defect. That was one of their defenses. Their biggest defense was that the operator's manual provided the necessary warning against it. And this product safety bulletin wasn't even answered. I think that's why they didn't even know what was in the product safety bulletin. How can they have a failure to warn of something that they don't even know what they're warning of? They weren't there to warn. They were there to disseminate products. And the economic loss rule in Florida talks about products. But even in the stipulation, you talk about what the dissemination was, and you label it as the warning. So at the end of the day, you can call it whatever you want, but what they were supposed to disseminate, or what you allege that they had a duty to disseminate, was a warning claim. That they had a duty to disseminate this potential warning that the German parent company had decided was important. And that's a service, Your Honor. Granted, I haven't, to be candid towards the tribunal, I have not looked at every failure to warn case in the state of Florida. I did, though, over the weekend, look at more than any human being should have. And most of those failure to warn cases, there is a known defect. There is a sale of a product. But this is why I asked the question of your learned friend on the other side, as to why we shouldn't certify this question, because I'm not sure that this panel that stands here in federal court should be deciding a question of Florida law, and whether or not, number one, does the economic loss rule apply to a product that is not defective in the traditional sense, but is a failure to warn claim. I mean, these are the kinds of questions, just like you read a lot of failure to warn claims cases, so did we. And I'd like to say that's not my job anymore. I'll bring a couple cases to the court's attention. First, Intiara, right? So, if we go back to the genesis of the economic loss rule, started in the Supreme Court looking at a defective product that damages only itself. The definition, Intiara, of economic loss, it's defined as damages for inadequate value, repair, replacement of a defective product. They stipulated that this product is not defective, so therefore, our case does not fall within the definition of economic loss under Intiara v. Marsh. And in this court's... But in American Aviation, it said, we conclude that the economic loss doctrine bars a negligence action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product and no established exception to the application of the rule applies. And I guess the question... One of the issues I'm having here is that, for better or for worse, Lieber USA was a distributor, right? Maybe it would have been a different issue if they were not a distributor, but they are. And I don't know if that's a distinction, is that a difference? But that's one of the issues I have. And if I can distinguish that for you, Your Honor, they weren't acting as a distributor in a sense, right? They're not distributing the product. They were past that. The product had been sold in 2016. We weren't in privity to them. And... But that was part of their contractual obligation when I think when the crane was sold, they still had to provide training? It was not a contractual obligation to us. We entered into... Our insured entered into a contract with Atlantic Coast. They bought it from Shook Heavy Lift. Shook Heavy Lift bought it from Liebherr US. Our insured entered into a contract with who they purchased it for for the training. They then contacted Liebherr Germany. Liebherr Germany instructed Liebherr US to provide that training. We were in a privity contract. It had nothing to do with it. It goes back to the analogy. If you were to buy... Let's say one of your honors wanted to learn how to fly a plane. And so you went to Cessna and purchased a plane. And then you went and got training on how to fly the plane. And the plane had no defective design, no defective manufacturer, no defective warning. It's just that the trainer gave you before training. That does not fall under a product issue. It falls under negligent training. It's a wholly different aspect. If the court were to say the training is now part of the economic loss rule, this court would be extending what the economic loss rule is in the state of Florida where the court is trying to bring it back to its origin of when it's simply a defective product. That is, a defective design. We didn't have a defective design here. A defective manufacturer. This product was over-engineered. Liebherr cranes are probably some of the best cranes in the world. They really state the standard for cranes in the world. Three, there was no defective warning. The court has to look at the time it left the manufacturer and then at the time of the incident. At the time it left the manufacturer, the manufacturer sent out a great crane. It sent out an operator's manual that provided information. And they published and sent out the product safety bulletin and the modification. They hired Liebherr U.S. to do a total separate service irrespective of their distributorship or sales. Liebherr U.S. is a sales service and training organization. They even separated. This was a service of distributing documentation and managing that documentation distribution. It has nothing to do with products. It has to do with the act of managing documents and sending them out and keeping their systems up to date on who actually owns these. That's a responsibility of theirs. What's the standard of care that you think applies to that particular duty? The standard of care was actually put forward with regard to the distribution by Liebherr Germany. Liebherr Germany, in their own product safety bulletin, says this has to be sent out immediately. Their dictionary defines immediately as without space in time. Without space in time. It was sent to them in November. Liebherr U.S. sent it out in late January, early February. They sent it out like a week after the accident, I think, in this case. To your client. To my insurance client, correct. My client's insured. But they sent it out to 25 of the 32 owners in the United States between late January and February. I think it was 11. And it was sent out there. They violated Liebherr Germany's own standard of care to send it out immediately because they sent it. Liebherr Germany sent it to Liebherr U.S. in November. So they violated the standard of care. If the court was to say, well, Ms. Cross-Bauman at Liebherr U.S. said that under the normal process that they send these out, it was only reasonable for them to get it out in that time. Well, they didn't send it out to us during that time, which would have been the reasonable time. So that's the standard of care. If you look at their own internal operations and ability to get it out, they would have sent it to Sims, but they didn't. She said she looked at the system. The system said it was owned by Shook. Paperwork said it was owned by Sims. She wasn't sure who owned it, so she went on vacation for two weeks and came back and did nothing. But why isn't that considered a warning? Because they're not in the process and in the act of warning. If Liebherr Germany, let's say, failed to prepare that product safety bulletin and failed to send it out, I would then agree with you, Your Honor, that that is a failure to warn. Because the consistent failure to warn cases are structured where there is a known defect, a known issue, a known warning problem. Well, here there was a known issue, right? The problem with the bolts. Correct. And then they were notified of that problem and asked to alert, if you don't want to use the word warn, right? But are we just looking for synonyms at this point? They being Liebherr Germany. And Liebherr Germany did what they were supposed to do, which was they created a product safety bulletin to remedy what they thought was an issue in their operator's manual. Then they hired. They could have not hired Liebherr U.S. to do it. They could have hired ABC Company to send it all out. And if ABC Company would have sent it all out and said, hey, here are the owners of all these Liebherr cranes. Make sure you send it all out. But isn't the reason, and I don't know this for a fact, but isn't the reason that Liebherr U.S.A. was involved in this is because since I guess they're the sole distributors who sell these kinds of cranes in the United States, and then they receive the information of who owns it. So they're supposed to keep track of who owns this, and I think they're also supposed to keep track of if there's a resale of who the new owner is. That, Your Honor, and that is the negligent act. But again, they do this as part of their work as a distributor because I believe they're the only distributors in the United States for these kinds of cranes. I will submit, Your Honor, it's not part of their distribution of the product. It is part of their sales service and training company. They even admit that they do service. This is a service, a service to distribute paperwork, a service to manage the paperwork, a service to know who owns these cranes so they can send out the paperwork. They can't fail to warn something that they don't even know. They testified under oath at trial and in depositions. They didn't even know what was in the product safety bulletin. They don't even teach their trainers what's in the product safety bulletin. And Ms. Cross, who was responsible for sending these out, had no idea what was in the safety bulletin. So there's no way they could have a failure to warn of something if they don't even know what it is. It could maybe not be a warning. It could be a coupon. But they failed to get it out. And that's a service that is not part of the product. We've let you go way over, Mr. Goodman. We have your argument. Thank you. Thank you very much. It's a pleasure to be here.  Mr. Conigliaro, you've reserved some time for rebuttal. Thank you, Your Honor. I heard two arguments in the argument we just watched. And I want to try to break them into two parts. The one part is NBIS is saying this is not a products case, so the economic loss rule doesn't apply. The other part is they're saying, but if it did, if it was, and if it did, then the stipulation overcomes that. And so let me quickly address the second part first and come back to the first. Regarding the stipulation, they are asserting that stipulation to have been a waiver by us of the economic loss rule. It was not. It was not. We did not stipulate that this is not a products case. We did not stipulate that the rule doesn't apply. There was simply a stipulation that the crane was not defective. And that has limited mileage. If anything, it should just help us as the defendant in this sort of case. It does not waive the economic loss rule. It's not whether the rule actually applies or not. The answer to that question is yes. What the counsel was trying to do was to somehow divorce this from the products realm. And it can't be done. LUS is the American distributor for Libra cranes. And LUS did perform or offer training services where the manual would be taught for owners like Sims of these cranes. That is part and parcel of the warnings that come with the product. This is not a situation where LUS is some company foreign to the distribution who decides I'm going to offer training on how to operate this crane safely. That's not what happened here. We have the actual American distributor come in and say, I'm going to teach you from the manual. And counsel, I will take serious issue with a certain thing counsel said, which was that it wasn't tried as a case where there were problems with the crane, there were problems with the instructions. That's exactly how this was tried. Dr. Vigilante was their expert. He testified repeatedly that the instructions were deficient. He didn't use the word defective. I'm sure he very carefully was told don't say defective, say deficient. But he said the warnings were deficient. The crane itself was deficient because it didn't have the stickers that later came with that product safety bulletin. You can't argue that the crane wasn't deficient, right, given that the crane was deficient given the stipulation. Well, but that was their case. They came in and said that all these things were deficient. And because when you came in and did your training, you didn't correct that by filling in the gaps of what wasn't in the manual, that you're liable for negligence. So that's what they've tried to do is use the stipulation as sort of a gotcha. And that should not be countenanced. The economic loss rule applies because everything about this is products. It's the distributor doing training based on the operating manual. It's the distributor disseminating the product safety bulletin from the manufacturer. Everything about this is a products case. I'm not going to get into the details, but I just wanted to remind the court before I sit down that in the briefing we have served two other sets of arguments. The second set says even if it's not an economic loss rule case, the duty doesn't actually exist because the only way you get to a duty is if the undertaker's doctrine applies. And for the reasons we've set out in the briefing, it doesn't. And then the last concern is the standard of care and the breach of the standard and the lack of evidence on those two points. So for all those reasons, we ask this court to reverse the judgment in this case, to remand back to the district court for entry of judgment in favor of OMS. Thank you. All right. Thank you, Mr. Conigliaro and Mr. Goodman. Well, why don't you file a request to file I'm not sure what you have there, but you have supplemental authority? Is this something that's already in the record? Okay. So you want to file supplemental authority? A case? All right. Well, I'll give you maybe three days. And then if you want to file a response two days after that. Okay. This is recent case law. Okay. All right. Thank you.